IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | | |
| | Plaintiff, | No. 2:10-cr-00145 KJN |
| | v. | |
| JORIM MELENDEZ, | | |
| | Defendant. | ORDER |
| _____/ | | |

Presently before the court is defendant's motion to suppress evidence seized from him, and statements allegedly made by him, during a traffic stop and subsequent search of his vehicle. (Dkt. No. 7, 19.) On October 18, 2010, the court held an evidentiary hearing regarding defendant's motion to suppress, and the following witnesses testified at the hearing: Officer Jeramiah Laudenslager, Officer Ken Marcus, and defendant.

For the reasons stated at the hearing and below, the undersigned will grant defendant's motion to suppress in part and deny it in part. The undersigned largely resolved the motion to suppress at the October 18th hearing and made several factual findings on the record at the close of that hearing. Accordingly, an extended discussion of the factual background of this case and the issues raised by the parties is not included here, and this order largely contains a summary of the courts rulings.

I.    Plain View

As discussed at the October 18th evidentiary hearing, the undersigned concludes that the government has waived its argument, and therefore may not argue, that Officer Laudenslager had probable cause to initiate his search of defendant's vehicle based on the "plain view" exception to the warrant requirement.  Although somewhat redundant of comments made at the evidentiary hearing, the undersigned will provide some explanation of the troubling nature of the government's conduct that gave rise to this finding of waiver.

Pursuant to a stipulated briefing schedule approved by the court, defendant filed his motion to suppress on July 7, 2010.  The government's counsel filed an opposition to defendant's motion on July 20, 2010.  The government's counsel had the benefit of reviewing the DVD recording of the traffic stop in question and communicating with Officer Laudenslager prior to filing its opposition.  Yet nowhere in the government's opposition brief does an argument based on plain view appear; the government primarily relied on a "collective knowledge" theory[1] to support the lawfulness of Officer Laudenslager's search of the vehicle, which resulted in the discovery of marijuana.  The government did not submit an affidavit or probable cause statement of Officer Laudenslager, let alone one that would have alerted the defendant or court to any reliance on a plain view theory.

On August 4, 2010, the undersigned conducted a non-evidentiary hearing and expressed great concern regarding the government's assertion of a collective knowledge theory on the particular facts of this case.  Anyone at the August 4th hearing would have readily ascertained that the government's opposition to the motion to suppress, at least with regard to the search of defendant's vehicle, was not well-taken.  Although under no obligation to order an evidentiary hearing, the undersigned ordered such a hearing with particular interest in hearing

---

[1] See United States v. Ramirez, 473 F.3d 1026 (9th Cir. 2007) (explaining the traditional applications of the collective knowledge doctrine, which is also referred to as the "fellow officer rule").

2

how the government planned to support its collective knowledge argument. At that time, the government still had not made any mention of a forthcoming plain view theory.

On September 3, 2010, the undersigned conducted—or at least intended to conduct—the previously ordered evidentiary hearing. However, counsel for both parties represented that the government, on the morning of the evidentiary hearing, had just raised a new theory in support of the search of defendant's vehicle. The government birthed the plain view argument after Officer Laudenslager reviewed the DVD recording of the traffic stop on the morning of the evidentiary hearing. The government revealed its plain view theory to defense counsel approximately five minutes before the evidentiary hearing. The undersigned was deeply troubled that the government had either: (1) decided to try to save a case apparently headed for defeat by raising a brand new theory of probable cause on the morning of an evidentiary hearing; (2) intentionally withheld its plain view theory from defendant until the morning of the evidentiary hearing; or (3) the most likely, inadequately prepared its opposition to the motion to suppress, and now wanted the court to excuse its last-minute efforts to prepare for the evidentiary hearing. Although defendants counsel represented that defendant was prepared to proceed with the evidentiary hearing that morning, the undersigned reset the evidentiary hearing for October 18, 2010. Among other things, the undersigned ordered the government to produce a written statement of Officer Laudenslager addressing his role in the traffic stop and any of his prior statements. The undersigned also permitted defendant to file an amended motion to suppress, but cautioned the government that "all is not forgiven" with respect to the nascent plain view argument and ordered that defendant could challenge the government's ability to rely on such a belated plain view theory.

Defendant filed a supplemental brief in support of its motion to suppress and argued, in part, that the government should be precluded from relying on the plain view theory because the government had waived that theory under Federal Rule of Criminal Procedure 12(e).

The government filed a response to defendant's supplemental briefing.[2]  As stated at the October 18th evidentiary hearing, the undersigned agrees with defendant's position.  Although outside of this district, district courts have recognized the applicability of the waiver provision in Rule 12(e), which was previously numbered as Rule 12(f), against the government to effectively estop the government from belatedly raising new theories in opposition to a motion to suppress.[3]  See United States v. Florack, 155 F.R.D. 49, 53-55 (W.D.N.Y. 1994) (concluding that waiver under then-numbered Rule 12(f) could be invoked to estop the government from making a new and belatedly raised argument, but finding that application of that waiver provision was not appropriate in the particular case); United States v. Reyes, No. 91-CR-56S, 1993 WL 8775, at *2 (W.D.N.Y. Jan 13, 1993) (unpublished) (precluding government from arguing a new and potentially meritorious theory in opposition to a motion to suppress when raised in a motion for reconsideration of the district court's order granting the motion to suppress), aff'd without opinion, 999 F.2d 536 (2d Cir. 1993); United States v. Ramos, 735 F. Supp. 75, 81 (W.D.N.Y. 1990) (same); United States v. Head, 737 F. Supp. 1287, 1288-89 (W.D.N.Y. 1990) (same); cf. United States v. Andrews, 764 F. Supp. 1252, 1254 (N.D. Ill. 1991) (denying government's belated motion to admit certain evidence of racketeering evidence prior to trial).  Although the waiver provision in Rule 12(e) has most-often been used to estop the government when the

---

[2] In its response to defendant's supplemental briefing, the government daringly laid the seeds for *additional, previously undisclosed* theories in support of the lawfulness of the search, above and beyond the newly minted plain view theory.  The undersigned discussed this issue at the hearing and will not belabor the point here.

[3] At the October 18th hearing, the government's counsel appeared somewhat incredulous that the waiver provision in Rule 12(e) could be applied against the government.  However, the plain language of Rule 12(e) reflects that the government may waive a "defense, objection, or request" because it states that such waiver may be effectuated by "[a] party"—the rule draws no distinction between a criminal defendant and the government.  Fed. R. Crim. P. 12(e).  The Advisory Committee Notes to the 1974 amendment of then-numbered Rule 12(f) further support that the government is subject to the waiver provision.  In discussing relief from waiver for "good cause," the Advisory Committee Notes state: "The amendment makes clear that the defendant *and, where appropriate, the government* have an obligation to raise the issue at the motion date set by the judge pursuant to subdivision (c)" (emphasis added).

...

1  government raised new theories in a motion for reconsideration of an order granting a motion to
2  suppress, the undersigned finds that the peculiar procedural facts of this case present no material
3  difference from those cases where the district courts found a waiver.[4]  Accordingly, the
4  undersigned finds that the government has waived any reliance on the plain view theory.
5  Moreover, the government has demonstrated no "good cause" that would support granting relief
6  from the waiver.  See Fed. R. Crim. P. 12(e) ("For good cause, the court may grant relief from
7  the waiver.").

8             However, as stated at the October 18th hearing, the undersigned concludes, in the
9  alternative, that even if the government were permitted to rely on a plain view theory, the
10 government has not met its burden to support such a justification.  In the written statement
11 ordered to be produced by the court, the government included a follow-on statement that Officer
12 Laudenslager essentially had no recollection of the traffic stop in question.  (Am. Suppl. Br. In
13 Supp. of Mot. to Suppress, App. A at 2 ("Until review of the video Officer Laudenslager did not
14 recall the events of December 26, 2009").)  Moreover, Officer Laudenslager's written statement
15 was uncertain and unconvincing with respect to his viewing of defendant's marijuana pipe in
16 plain view.  He stated:

> I recall observing what appeared to be a marijuana pipe and retrieving it
> from the vehicle.  I do not recall where the marijuana pipe was located in
> the passenger compartment.  After watching the video I was standing
> outside the passenger door when I observed and retrieved the marijuana
> pipe.  It appeared that I did not manipulate anything inside the passenger
> compartment, leaving me to believe the pipe was in plain view.

21 (Id.)  Officer Laudenslager's testimony at the evidentiary hearing regarding his independent
22 recollection of the search was equally circumspect and unsure.  Even his testimony based on his

---

[4] The undersigned stresses that this decision is specific to the peculiar facts of this case. The government should not be required to assert every meritorious and non-meritorious defense at the outset in an effort to preserve its arguments.  However, when the court has set a motion briefing schedule, the government may not withhold meritorious theories from defense counsel either as a result of belated or unreasonably inadequate investigation or as a means of preserving an element of surprise.

5

review of the DVD recording was cautious and unconvincing with respect to the plain view argument. Accordingly, in the alternative, the undersigned concludes that the government's plain view argument is unsupported and unavailing.[5]

II.     Collective Knowledge

As explained in detail at the hearing on August 4, 2010, and the evidentiary hearing on October 18, 2010, the undersigned finds equally unpersuasive the government's reliance on the collective knowledge doctrine to support Officer Laudenslager's search of defendant's vehicle. Essentially, the problem with this argument is a temporal one. Officer Laudenslager began searching defendant's vehicle without any apparent reason to do so[6] almost immediately after commencement of the traffic stop and, as Officers Marcus and Laudenslager testified, without any communication with Officer Marcus. Now, the government would have the court apply Officer Marcus's later-acquired purported probable cause to sanitize the previous, unreasonable search conducted by Officer Laudenslager. The government's argument smacks of "bootstrapping," and this court's acceptance of that argument would not serve the purposes of the collective knowledge doctrine. The doctrine cannot be meant to allow law enforcement officers to violate a defendant's Fourth Amendment rights at will and then obtain probable cause after violating that defendant's constitutional rights in order to purify the initial constitutional violation. Accordingly, the undersigned concludes that the collective knowledge doctrine is inapplicable here.

---

[5] The undersigned by no means intends to impugn Officer Laudenslager's character. To the contrary, Officer Laudenslager demonstrated the good quality of his character while testifying. The undersigned appreciated Officer Laudenslager's candor with respect to his uncertainty about the facts at issue.

[6] As stated at the hearing, the undersigned finds that Officer Laudenslager cannot justify his search based on the need for officer safety. After eventually removing the other passengers from the vehicle, Officer Laudenslager permitted those occupants to freely mill about the vehicle without inspection and with his back turned, and did not conduct a "pat down" search of those occupants until several minutes into the search of the vehicle. He hardly appeared to be concerned about officer safety.

1    In light of the foregoing, the undersigned concludes that Officer Laudenslager
2 lacked probable cause to search defendant's vehicle.  Therefore, the undersigned will suppress
3 the marijuana found in the vehicle and defendant's statements regarding his ownership of the
4 marijuana.[7]

5 III.    Consent to the PAS Screening Test and Evidentiary Test

6    Finally, defendant contends that the results of the blood alcohol screening breath
7 test, the subsequent evidentiary breath test, and defendant's statements regarding the amount of
8 alcohol he had consumed must be suppressed on the ground that Officer Marcus coerced
9 defendant's consent to the initial screening test.  At the October 18th evidentiary hearing, the
10 undersigned stated an initial inclination to find that defendant validly consented to the initial
11 breath test, but that further review of the evidence in this matter was warranted in light of Officer
12 Marcus's testimony that defendant was not "free to leave" at any time after the traffic stop began,
13 and defendant's testimony that he did not feel free to leave at any time.

14    The undersigned finds that although this is a close case, defendant validly
15 consented to taking the blood alcohol screening breath test under the totality of the
16 circumstances.  See United States v. Brown, 563 F.3d 410, 415 (9th Cir. 2009) ("Whether
17 consent to search was voluntarily given is 'to be determined from the totality of all the
18 circumstances.'") (quoting Schneckloth v. Bustamonte, 412 U.S. 218, 227 (1973)).  In this
19 Circuit, courts "consider five factors in determining whether consent was voluntarily given: (1)
20 whether the defendant was in custody; (2) whether the arresting officer had his gun drawn; (3)
21 whether *Miranda* warnings were given; (4) whether the defendant was notified that he had a right
22 not to consent; and (5) whether the defendant had been told that a search warrant could be
23 obtained."  United States v. Vongxay, 594 F.3d 1111, 1119-20 (9th Cir. 2010).  "All five factors
24 need not be satisfied in order to sustain a consensual search," id. at 1120, and "no one factor is

---

[7] For the reasons stated at the hearing, the undersigned also finds the government's arguments premised on the automobile exception and inevitable discovery doctrine unpersuasive.

7

determinative." Brown, 563 F.3d at 415.

The undersigned has considered the applicable factors and finds that defendant was clearly and repeatedly warned by Officer Marcus that defendant was not required to take the screening test, that the test was voluntary in nature, and defendant had the right to refuse his consent. Although expressing hesitation when initially asked for his consent, defendant ultimately consented in an effort to be agreeable and stated that he was only "asking [his] rights, seriously." Moreover, Officers Marcus and Laudenslager did not draw their weapons. Defendant voluntarily consented, and his will was not overborne by Officer Marcus. Accordingly, the undersigned will not suppress the evidence of the results of the blood alcohol screening breath test, the subsequent evidentiary breath test, and defendant's statements regarding the amount of alcohol he had consumed.

IV.  CONCLUSION

For the foregoing reasons, IT IS HEREBY ORDERED that:

1. Defendant's motion to suppress (Dkt. Nos. 7, 19) is granted in part.

2. The following evidence is suppressed: the marijuana found in the vehicle and defendant's statements regarding his ownership of the marijuana.

3. Counsel for the parties shall appear at a status conference before the undersigned on November 10, 2010, at 9:00 a.m. Defendant's appearance may be excused at that status conference.

IT IS SO ORDERED.

DATED: October 22, 2010

KENDALL J. NEWMAN
UNITED STATES MAGISTRATE JUDGE